IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ASTRA CAPITAL, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 17 C 6431 |
| | ) |
| BCI AIRCRAFT LEASING, INC., AEGIS AIRCRAFT LEASING, LLC, and AIRCRAFT ENGINE LEASE FINANCE, INC., | ) ) ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Astra Capital, LLC has sued BCI Aircraft Leasing, Inc., Aegis Aircraft Leasing, LLC, and Aircraft Engine Lease Finance, Inc., for breach of contract. Astra Capital alleges that it is contractually entitled to referral fees for helping facilitate the sale of aircraft to Avior Airlines, a Venezuelan airline company. In the alternative, Astra Capital contends that it is owed referral fees because it was the procuring cause of the sales to Avior. The defendants have moved for summary judgment.

## Background

Advanced European Technologies, Inc. is a company that trades aircraft and aircraft parts. In 2012, Avior Airlines approached Peter Hellebrand, the president of Advanced and a former vice president at Avior, about acquiring eight airplanes. Hellebrand took their offer to BCI, a commercial aircraft leasing company. At the time, the president of BCI was Brian Hollnagel, who remains the company's sole shareholder.

In October 2012, Advanced and BCI entered into a referral fee agreement. The contract identified eight Boeing 737-400 aircraft and stated that if BCI successfully sold any of those aircraft to Avior before the contract term expired on December 27, 2012, it would pay Advanced a $250,000 referral fee for each plane sold.

Hellebrand testified that soon after they signed the referral fee agreement, Advanced and BCI agreed to an oral modification. Specifically, Hellebrand stated that they acknowledged that BCI would be unable to sell all eight aircraft to Avior before the contract term expired. The reasons for this are disputed, but Hellebrand testified that it was related to the Venezuelan government's restrictions on aircraft imports. Hellebrand stated that based on this restriction, Advanced and BCI agreed to modify the referral agreement to give Advanced the right to referral fees when the remaining planes were sold even if the contract term had elapsed. He testified that he and Hollnagel understood that Hellebrand would receive referral fees for a total of eight planes if BCI ultimately sold them to Avior. That alleged modification was never committed to writing, but—importantly for the purposes of this motion—the defendants do not argue that a reasonable jury could not find that the oral modifications did not occur as Hellebrand described.

In November 2012, BCI and Avior reached an agreement to sell four of the Boeing aircraft identified in the referral fee agreement. BCI delivered those aircraft in 2013 and 2014. But progress on an agreement to sell additional aircraft to Avior stalled from 2013 through 2014 while Hollnagel was tried and convicted of fraud in connection with his management of BCI. He served four months in federal prison and was released in December 2014.

2

In 2015, Avior (or an associated business entity) agreed to buy five more aircraft from Aegis Aircraft Leasing, Hollnagel's consulting company, and Aircraft Engine Lease Finance Inc. (AELF), a commercial aircraft leasing company owned by Hollnagel's wife.[1] Hellebrand testified that Advanced did not participate in any negotiations between BCI and Avior after 2013.

In January 2016, Advanced believed that BCI still owed it money under the referral fee agreement. The parties negotiated an agreement under which Aegis, Hollnagel's consulting company, agreed to pay Advanced a total of $260,000 over a period of several months. Hellebrand testified that the purpose of this agreement was to determine a payment plan for his referral fees for the first four planes BCI sold to Avior, and that Hollnagel told him that they would negotiate payment on the additional aircraft sales at a later time.

In June 2016, Advanced and Hollnagel negotiated a second letter agreement. This contract noted that Aegis had paid the first $25,000 installment to Advanced and stated that AELF, rather than Aegis, would pay the remaining $235,000. To date, the defendants have paid a total of $496,966 under the referral fee agreement. Some of that total was paid to Advanced and some to Astra Holdings Ltd., a holding company related to Advanced.

In October 2016, Hellebrand and Hollnagel exchanged text messages about the referral fees that Hellebrand believed he was owed for the aircraft Avior agreed to buy in 2015. Hollnagel wrote that he felt "less ethically bound to pay on these," citing

---

[1] The precise relationship between BCI, Aegis, and AELF is a matter of some dispute. Because the defendants do not raise the issue, the Court will assume that the distinctions among these entities are not material to this motion.

3

"significant restructuring," "the fact that they still don't have any up in the air," and the de minimis amount that BCI had been paid on the aircraft thus far. Text Messages, Defs.' Ex. 15, dkt. no. 68-4, at 6. Hollnagel and Hellebrand did not reach an agreement for the payment of any additional referral fees.

In May 2017, Advanced and Astra Holdings, Ltd. assigned all their potential claims against BCI, Aegis, and AELF to Hellebrand's other holding company, Astra Capital LLC. Astra Capital then sued BCI, Aegis, and AELF in Illinois state court. The defendants removed the case to federal court, invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332. The defendants have moved for summary judgment.

## Discussion

Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *United States v. Z Inv. Props., LLC*, 921 F.3d 696, 699-700 (7th Cir. 2019). The Court views the evidence and draws "[a]ll justifiable inferences" in favor of the non-moving party. *Giles v. Godinez*, 914 F.3d 1040, 1048 (7th Cir. 2019). The defendants are entitled to summary judgment only if no reasonable jury could find in favor of Astra Capital. *See Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018).

In count 1 of the complaint, Astra Capital alleges that the defendants breached the referral agreement as orally modified by failing to pay referral fees for the planes Avior agreed to buy in 2015. In count 2, which is pleaded in the alternative to count 1, Astra Capital contends that even if it is not entitled to recover referral fees for the later-sold aircraft, it is entitled to $500,000—the extent to which Advanced discounted the

4

referral fees to which it contends it was entitled for the sale of the first four planes in anticipation of future payment on the later-sold aircraft. In count 3, also pleaded in the alternative, Astra Capital alleges that it is entitled to referral fees because it is the "procuring cause" of BCI's sales to Avior.

**A.    Novation**

The defendants argue that they are entitled to summary judgment on counts 1 and 2 because the 2016 letter agreements are novations. "A novation occurs when by mutual agreement, a new debtor or creditor is substituted for an existing debtor or creditor, whereby the old debt is extinguished, or a new debt or obligation is substituted for an existing debt or obligation, which is thereby extinguished." *Crest Hill Land Dev., LLC v. Conrad*, 2019 IL App (3d) 180213 ¶ 35, 2019 WL 494104, at *5. Astra Capital argues that there was no novation, although it would be more accurate to say that it disputes the scope of the novation—that is, whether the 2016 letter agreements displaced all of the defendants' debt or only some of it.[2] Specifically, the parties disagree about whether the new obligations to Advanced set out in the letter agreements substituted for the amount owed in referral fees for all the planes that BCI ultimately sold to Avior, or only for the fees associated with the first four planes.

To show that a novation released them from their duties under the referral fee agreement, the defendants must prove four elements: "[1] a previous, valid obligation; [2] a subsequent agreement of all the parties to the new contract; [3] the extinguishment

---

[2] The 2016 letter agreements also constitute novations in the sense that they substituted Aegis and then AELF as the obligors for BCI's debt to Advanced. That the letter agreements are novations in this respect is apparently undisputed and is not directly relevant to the defendants' summary judgment motion.

5

of the old contract; and [4] the validity of the new contract." *Cincinnati Ins. Co. v. Leighton*, 403 F.3d 879, 887 (7th Cir. 2005). "For there to be a novation, the obligee must assent to the substitution and agree to release the obligor." *Id.* The Court does not presume that the parties intended to extinguish the prior debt, and "the party claiming discharge has the burden of proving novation by a preponderance of the evidence." *Pielet v. Pielet*, 2012 IL 112064 ¶ 52, 978 N.E.2d 1000, 1015. The parties' intent need not be express, however; intent "can be implied form the circumstances of a transaction or the subsequent conduct of the parties." *Kroll v. Sugar Supply Corp.*, 116 Ill. App. 3d 969, 974, 452 N.E.2d 649, 653 (1983).

The defendants principally rely on the language of the letter agreements to argue that these agreements fully replaced their obligations to Advanced under the referral fee agreement. The letter agreements state that they are "for the payment of referral fees agreed to by the parties for referrals previously provided by Advanced European Technologies, Ltd. (the 'Broker') to BCI Aircraft Leasing, Inc. ('BCI') . . . with regard to business relationships developed with Avior Airlines C.A. . . .". Jan. 2016 Letter Agreement, Defs.' Ex. 10, dkt. no. 55-10, at 1; June 16, 2016 Letter Agreement, Defs.' Ex. 11, dkt. no. 55-11, at 1. The defendants argue that this language broadly encompasses all of their obligations under the referral fee agreement.

Notably, however, the letter agreements state that they concern "the payment of referral fees" but do not specify whether they cover all or only some of those referral fees. On its face, this language might refer to the entirety of the defendants' obligations to Advanced or to a subset of those obligations. The defendants emphasize the phrase "for referrals previously provided," arguing that because Advanced had already provided

6

all of the relevant referral services, this language broadly includes all of BCI's potential debts under the referral fee agreement. But this phrase is equally ambiguous because it might refer to either some or all of the previously provided referrals. Because the language of the letter agreements is susceptible to multiple reasonable interpretations, the Court considers extrinsic evidence to determine the parties' intent. *See Right Field Rooftops, LLC v. Chi. Cubs Baseball Club, LLC*, 870 F.3d 682, 690 (7th Cir. 2017).

The Court concludes that summary judgment is inappropriate in light of the conflicting extrinsic evidence of the parties' intent. Hellebrand testified that the letter agreements were intended to address BCI's obligations to Advanced regarding only the first four aircraft sold. He also stated that Hollnagel told him that they would work out a payment deal for referral fees for the other aircraft in the future. In response, the defendants point out that at the time of the January 2016 meeting, Advanced knew that BCI had reached a deal to sell five additional planes to Avior. They argue that because Advanced told BCI that it was concerned about payment for those planes, the novation must have been intended to address all of BCI's outstanding debt obligations. But even if these facts supported a reasonable inference that letter agreements were intended to extinguish all of BCI's preexisting obligations to Advanced, at the summary judgment stage, the Court must draw all reasonable inferences in favor of the non-moving party. *See Giles*, 914 F.3d at 1048.

The defendants' remaining arguments concerning the novation are unavailing. They argue that because the parties established a contract "covering the same subject matter" as the referral fee agreement, Defs.' Mem. in Supp. Summ. J, dkt. no. 56, at 5, the letter agreements were necessarily a novation that extinguished all of BCI's

7

obligations under the referral fee agreement. But the defendants cite no authority for proposition that any later agreement regarding the same subject matter necessarily constitutes a novation. Indeed, this argument is inconsistent with the principle that courts do not presume the parties' intent to form a novation. *See Pielet*, 2012 IL 112064 ¶ 52, 978 N.E.2d at 1015. And even if the defendants had accurately characterized the law, the parties dispute whether the 2016 letter agreements do in fact cover the same subject matter as the referral fee agreement because they disagree about the scope of the letter agreements. That genuine factual dispute makes summary judgment inappropriate.

Because there is a genuine dispute about whether the parties to the 2016 letter agreements intended to form a novation that extinguished all of BCI's pre-existing obligations under the referral fee agreements, the Court concludes that the defendants are not entitled to summary judgment on counts 1 and 2.

**B.     Procuring cause**

In count 3, Astra Capital alleges that it is entitled to commissions on BCI's sales to Avior in 2015 because Advanced was the "procuring cause" of those sales. Under the common-law doctrine of procuring cause, "a party may be entitled to commission on sales made after termination of a contract if that party procured the sales through its activities prior to termination." *Hammond Grp., Ltd. v. Spalding & Evenflo Cos.*, 69 F.3d 845, 850 (7th Cir. 1995) (internal quotation marks omitted).

The defendants argue Astra Capital cannot recover under a procuring-cause theory because the existence of the referral fee agreement bars relief. Alternatively, they argue that even if this claim is cognizable, no reasonable jury could conclude that

Advanced was the procuring cause of the defendants' sales to Avior in 2015.

1. **Effect of the referral fee agreement**

The defendants first contend that the written referral agreement precludes Astra Capital from asserting a procuring cause claim. A plaintiff may not recover under the procuring cause doctrine if the referral contract "expressly provide[s] when commissions will be paid." *Tech. Representatives, Inc. v. Richardson-Merrell, Inc.*, 107 Ill. App. 3d 830, 833, 438 N.E.2d 599, 603 (1982); *see also Rico Indus., Inc. v. TLC Grp., Inc.*, 2018 IL App (1st) 172279 ¶ 58, 2018 WL 6843716, at *12.

The defendants are correct that the July 2012 referral fee agreement contained an express limitation of the type that would generally preclude recovery under the doctrine of procuring cause. *See, e.g.*, *Borum v. Wideopenwest Ill., LLC*, 2015 IL App (1st) 141482-U ¶ 66, 2015 WL 4716105, at *10 (holding that the plaintiff's procuring cause claim was barred because the employment agreement "expressly provided that the plaintiff would receive commission only on [transactions completed] while the employment agreement was in effect"). But Astra Capital cites Hellebrand's testimony that this agreement was orally modified to allow Advanced to recover referral fees for sales after the term of the written agreement expired. The defendants do not argue that a reasonable jury could not credit Hellebrand's testimony about the nature of that modification. If the jury were to find that the parties orally modified the written agreement to remove the express term limitation, that term would not pose a bar to recovery. The defendants therefore are not entitled to summary judgment on that basis.

2. **Proximate cause**

The defendants argue that no reasonable jury could find that Advanced was the

9

procuring cause of BCI's sales to Avior after 2012. To survive summary judgment on this claim, Astra Capital must point to evidence that Advanced initially brought Avior and BCI together or was instrumental to the sales for which it seeks referral fees. *See Halpern v. Titan Commercial LLC*, 2016 IL App (1st) 152129 ¶ 18, 67 N.E.3d 426, 430 ("A real estate broker may be the procuring cause of a sale if he brings together the parties who ultimately consummate the transaction or if he is instrumental in its consummation."). It is undisputed that Advanced initially brought Avior and BCI together and that they would not have contracted with one another but for Advanced's efforts. Astra Capital also points to testimony that Advanced provided information to the parties about the Venezuelan aviation authority that helped facilitate the sales. These efforts support a reasonable inference that Advanced was the procuring cause. *See id.* ("[A] real estate broker may be the procuring cause where the transaction is effectuated through information which he disseminates. . . .").

The defendants rely on the Seventh Circuit's decision in *Furth v. Inc. Publishing Corp.*, 823 F.2d 1178 (7th Cir. 1987). In *Furth*, the court upheld the district court's ruling dismissing a procuring cause claim by an advertising salesman for a magazine company. The court explained that Furth was not entitled to recover under a procuring cause theory because he testified that he did not earn his commission until the advertisements were actually printed. *Id.* at 1180-81. *Furth* does not control this case, however, because there is no comparable evidence that Advanced's right to recover referral fees was similarly limited. *See id.* at 1180 n.4 (explaining that "[t]he most important fact for this appeal is that Furth testified that he did not earn a commission merely because an insertion order had been procured").

The other Seventh Circuit cases discussing procuring cause do not require a different result. For example, in *Mirza v. Fleet Retail Finance, Inc.*, 354 F.3d 687 (7th Cir. 2004), the court held that a loan finder (as opposed to a loan broker) could not recover unless he initially introduced the parties. *Id.* at 689-90. The court also noted that the plaintiff could not show that he was a loan broker because he "did not participate in negotiations between the parties" or "have any substantive contact with the parties during the last five months of negotiations." *Id.* at 690. In this case, by contrast, it is undisputed that Advanced introduced the parties, in addition to participating in the initial negotiations and maintaining substantive contact with the parties over a period of years.

Finally, the defendants cite the Illinois Appellate Court's decision in *Wilmette Real Estate & Management Co. v. Luvisi*, 172 Ill. App. 3d 232, 526 N.E.2d 477 (1988), in which the court noted that "[i]t is not enough that the broker was the first to bring the property to the attention of the ultimate purchaser; rather it must be shown that the sale was the proximate result of his efforts." *Id.* at 237, 526 N.E.2d at 480. The court also held that "where there is an intervening instrumentality, such as new or independent negotiations, a broker will not be entitled to the commission merely because of his initial introduction of the ultimate purchaser to the property." *Id.* at 237, 526 N.E.2d at 481. In *Wilmette Real Estate*, however, the evidentiary record was sparse, and the plaintiff pointed to no evidence "showing the nature of Wilmette's role in this transaction or what, if any, efforts it made in connection with [the] purchase of the property." *Id.* at 238, 526 N.E.2d at 481. In this case, however, the evidence supports a reasonable inference that Advanced was considerably more involved in BCI's sales to Avior: it introduced the

parties, facilitated negotiations, and provided important information about the Venezuelan aircraft industry. And the fact that Hellebrand testified that Advanced did not participate in the negotiations for the 2015 sales is not dispositive. He stated that the reason Advanced did not participate is that Hollnagel purposefully kept it out of the negotiations. A jury could reasonably infer that Hollnagel did so with the purpose of avoiding additional obligations under the referral fee agreement—the exact conduct that the procuring cause doctrine is designed to protect against. See *Halpern*, 2016 IL App (1st) 152129 ¶ 22, 67 N.E.3d at 432 ("If a buyer excludes a broker from a transaction, the buyer may become liable to pay the broker's commission even in the absence of an express agreement.").

Because Astra Capital has introduced sufficient evidence to permit a reasonable jury to find that Advanced was the procuring cause of BCI's sales to Avior in 2015, the Court denies the motion for summary judgment on count 3.

## Conclusion

For the foregoing reasons, the Court denies the defendants' motion for summary judgment [dkt. no. 53]. The case is set for a status hearing on May 30, 2019 at 9:30 a.m. for the purpose of setting a trial date and discussing the possibility of settlement.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: May 24, 2019